## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | |
| | ) | **Criminal Case No. CR-18-38-RAW** |
| v. | ) | |
| | ) | **Civil Case No. CV-21-185-RAW** |
| NOWLIN LEE WAUGH, JR., | ) | |
| | ) | |
| Defendant/Movant. | ) | |

## ORDER

Now before the court is the *pro se* motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence ("§ 2255 motion") filed by Defendant Nowlin Lee Waugh, Jr. [CR Doc. 109; CV Doc. 1]. The Government filed a brief in opposition to Defendant's § 2255 motion. [CR Doc. 113]. Defendant did not file a reply.

The Tenth Circuit, in an opinion filed on December 17, 2019, provided the following background of this case:

> On March 23, 2018, Defendant Nowlin Lee Waugh, Jr. was driving on Interstate 40 in Eastern Oklahoma when Oklahoma Highway Patrol Trooper Aaron Lockney observed his vehicle cross over his fog line. Believing the driver was fatigued, texting, or under the influence of drugs or alcohol, Trooper Lockney initiated a traffic stop. Trooper Lockney activated his emergency lights, but Defendant refused to yield and continued eastbound on Interstate 40. Trooper Lockney observed Defendant moving erratically and reaching into the backseat area of the vehicle. Trooper Lockney also observed Defendant throwing items out of the driver's side window.

> After following Defendant for approximately 10 miles, Trooper Lockney performed a "tactical vehicle intervention," ramming Defendant's vehicle and bringing it to a stop. Trooper Lockney identified Defendant as the driver and sole occupant of the vehicle. Inside the vehicle, Trooper Lockney and other officers found two trashcans, four gallon-size bottles of bleach, shards of suspected methamphetamine strewn about the vehicle, six kilo-sized vacuum-sealed bags that had been ripped open, two or three gallon-sized Ziploc bags, and some shrink wrap. The interior of the vehicle was wet in places and smelled strongly of bleach. One of the trash cans contained

> bleach and shards of suspected methamphetamine. The troopers believed Defendant used the bleach to destroy large quantities of methamphetamine during the ten-mile police chase. The troopers recovered the largest shards of suspected methamphetamine for testing. The suspected methamphetamine was subsequently weighed at 54.19 grams of methamphetamine with a 93% purity rate.

*United States v. Waugh*, 950 F.3d 665, 666 (10th Cir. 2019). [CR Doc. 102 at 1-2].

In August of 2018, a jury found Defendant guilty of one count of Possession with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). Defendant was represented by retained counsel, Dan Medlock. A draft presentence investigation report ("PSR") was prepared by the probation office. Mr. Medlock objected to numerous paragraphs within the PSR, and the Government responded in opposition to each of Mr. Medlock's objections. [CR Docs. 75 and 76]. The probation office provided a response to the objections, and a final PSR was filed on November 15, 2018. Based upon a total offense level of 34 and a criminal history category of IV, the guideline imprisonment range was 210 months to 262 months. [*PSR* at ¶ 59].

Prior to sentencing, Mr. Medlock filed a motion for downward departure and/or request for variance below sentencing guidelines. [CR Doc. 79]. Defendant argued in part that a criminal history category of IV "over-represent[ed] the seriousness of his history and the likelihood of him re-offending." *Id*. at 2. The Government filed a response to the motion for downward departure and/or request for variance, claiming his "criminal history is not substantially overrepresented and appears to be underrepresented," and further, "there is utterly no indication the defendant will not re-offend when released from incarceration." [CR Doc. 81 at 3].

Defendant appeared with Mr. Medlock for sentencing on December 6, 2018. [CR Doc. 82]. Mr. Medlock informed the court that he had received the PSR and reviewed it with Defendant. [CR Doc. 97 at 2]. The court then heard argument regarding Defendant's objections to the PSR. The court sustained the fourth objection. *Id*. at 12. The two-level enhancement for reckless endangerment during flight pursuant to U.S.S.G. § 3C1.2 was removed, resulting in a total offense level of 32, and corresponding sentencing range of 168 to 210 months. *Id*. Defendant's motion for downward departure and/or request for variance was

denied. The court found the PSR would form the factual basis for sentencing. Defendant was committed to the custody of the Bureau of Prisons to be imprisoned for a total term of 186 months. [CR Doc. 83 at 2]. Judgment was entered on December 7, 2018. A notice of appeal was filed on the same date. [CR Doc. 85]. Mr. Medlock filed a motion to withdraw and request for appointment of appellate CJA counsel, which was granted by the Tenth Circuit, and the Office of the Federal Public Defender for the Districts of Colorado and Wyoming was appointed to represent Defendant pursuant to 18 U.S.C. § 3006A. Mr. Dean Sanderford, Assistant Federal Public Defender, appeared as counsel for Defendant-Appellant. The sole issue on appeal was whether this court erred in refusing to instruct the jury on the lesser included offense of simple possession of methamphetamine. On December 17, 2019, the Tenth Circuit affirmed, explaining that "[g]iven the substantial evidence supporting a distribution theory, and the complete lack of evidence supporting a personal use theory, we cannot say the district court abused its discretion in declining to give an instruction for the lesser included offense of simple possession." *United States v. Waugh*, 950 F.3d at 670. [CR Doc. 102 at 9].

Defendant contends in Ground One of his § 2255 motion that "both the mode and duration of [his] detention w[ere] unreasonable and the circumstances exceeded the parameters of <u>Terry</u>, and constituted a 'Dr Facto Arrest' [sic] unsupported by probable cause." [CR Doc. 109 at 4]. In Ground Two, he claims he "made no risky manuvers [sic] or high-speed chase to establish reasonable justification for police to ram the car to stop it." *Id*. at 6. In Ground Three, he alleges his "[d]ue [p]rocess rights to a fair trial were violated because the state failed to establish the chain of custody for the drug evidence [sic] which formed the basis for [Defendant's] conviction." *Id*. at 7. In Ground Four, he argues that "[t]he evidence [sic] was altered in a material aspect which leads to the possibility that the evidence [sic] underwent alteration." *Id*. at 9. In Ground Five, he claims "applying the Exclusionary Rule the Evidence [sic] must be excluded because the officer exploited his illegal search and seizure to discover the illegal activity." *Id*. at 10. In Ground Six, Defendant contends the "[e]vidence in [his] case was derived as a direct result of an illegal search adn [sic] seizure and relevant here Fruit of a Poisonous Tree." *Id*. In response, the Government contends that these issues in Grounds One through Six are procedurally barred and that "Defendant defaulted the above

claims, having failed to raise them on appeal."[1]   [CR Doc. 113 at 10, 12].   The court agrees with the Government.

"A § 2255 motion is not available to test the legality of a matter which should have been raised on direct appeal." *United States v. Cox*, 83 F.3d 336, 341 (10th Cir. 1996) (citing *United States v. Warner*, 23 F.3d 287, 291 (10th Cir. 1994)).   "When a defendant fails to raise an issue on direct appeal, he is barred from raising the issue in a § 2255 proceeding, unless he establishes either cause excusing the procedural default and prejudice resulting from the error or a fundamental miscarriage of justice if the claim is not considered." *Id.*   Defendant has failed to establish cause and prejudice sufficient to overcome the procedural default rule.   Moreover, Defendant has failed to demonstrate actual innocence, meaning he has failed to support a claim for miscarriage of justice.

Defendant also asserts claims relating to ineffective assistance of counsel.   In Ground One, Defendant claims his attorney was ineffective for failing to defend against illegal search and seizure, arguing that "appellant counsel failed to raise the issue, because [t]rial [c]ounsel failed to raise the issue."   [CR Doc. 109 at 4].   In Ground Four, Defendant claims his attorney was ineffective for failing to argue the evidence was altered, noting that "[d]espite [Defendant's] request, [c]ounsel did not raise the issue." *Id*. at 9.   In Ground Seven, in a catchall statement, Defendant contends that Mr. Medlock "was ineffective for failing to raise the issues presented in Grounds One through Six" of his § 2255 motion. *Id*. at 10.   Similarly, in Ground Eight, he complains that Mr. Sanderford was ineffective for failing to raise the issues presented in Grounds One through Six on direct appeal. *Id*. at 15.   Defendant's ineffective assistance claims are not procedurally barred and can be reviewed on the merits.

The Government contends in response that Defendant cannot establish ineffective assistance of counsel.   [CR Doc. 113 at 13].   The Government describes Defendant's claims as "conclusory allegations, which are unsupported by either fact or legal authority." *Id*. at 14-15. The claims, according to the Government, are "insufficient to establish ineffective assistance." *Id*. at 15.   The Government argues that "Defendant's allegations are also contradicted by the

---

[1]       The Government concedes that Defendant's § 2255 motion is timely.   [CR Doc. 113 at 10 n. 4].

record and are without merit." *Id.*  The Government asserts that "Mr. Medlock's continued challenge of all aspects of the stop, search, and seizure in Defendant's case directly contradicts Defendant's claims of ineffectiveness," and that "the record establishes the physical drug evidence presented at trial had not been susceptible to tampering and thus had not been altered – other than for forensic testing purposes." *Id.* at 20-21.

The Sixth Amendment gives criminal defendants the right to effective assistance of counsel, and claims of ineffective assistance of counsel are governed by the familiar two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the *Strickland v. Washington* standard, Defendant must demonstrate that (1) the representation was deficient because it fell below an objective standard of reasonableness under prevailing professional norms; and (2) the deficient performance prejudiced the defense. *Id.*, 466 U.S. at 687.  Regarding the first prong, the *Strickland* Court provided the following guidance:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

*Id.* at 689 (internal citation omitted).  With respect to the second prong, the Supreme Court explained a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  This court "may address the performance and prejudice components in any order, but need not address both if [Defendant] fails to make a sufficient showing of one." *Foster v. Ward*, 182 F.3d 1177, 1184 (10th Cir. 1999).  "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 599 U.S. 356, 371 (2010).  "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney." *Harrington v. Richter*, 562 U.S. 86, 110 (2011) (citations and internal quotation marks omitted).

Defendant alleges that his attorney failed to defend against illegal search and seizure. The court disagrees. As noted by the Government, "there was substantial litigation regarding the facts and legality of the stop, search, and arrest of Defendant." [CR Doc. 113 at 21]. Mr. Medlock filed a motion to suppress, requesting "that all evidence obtained from [Defendant's] unlawful detention and the subsequent warrantless search of the vehicle . . . be suppressed as said actions violate his rights under the Fourth Amendment of the United States Constitution." [Doc. 33 at 6]. Following a hearing, United States Magistrate Judge Kimberly E. West entered a Findings and Recommendation ("F&R") [CR Doc. 40], recommending that Defendant's motion to suppress be denied. Defendant objected to the F&R, arguing there was "no evidence that a traffic violation occurred and if a violation did occur there is no evidence that the Defendant's vehicle crossed the fog line an appreciable time or in an appreciable manner," and that "[t]he Trooper did not have the necessary reasonable suspicion or probable cause to justify the stop; thus, the stop and subsequent search were illegal." [CR Doc. 53 at 1]. This court affirmed and adopted the F&R. [CR Doc. 56]. The following month, Defendant was well represented at trial.

Defendant also claims his attorney was ineffective for failing to argue the evidence was altered. Defendant contends that pictures of the evidence taken during his arrest showed "shards or supposed Ice or Methamphetamine, but a brown substance was presented at trial." [CR Doc. 109 at 9]. Trooper Koch testified at trial that, following the car chase and subsequent crash, he was unable to gather all of the shards of methamphetamine from within the vehicle. [CR Doc. 99 at 118-27]. He explained that he picked up "the biggest obtainable portion without basically spending two hours probably, you know, getting every little bit . . . ." *Id*. at 125. The physical evidence was given to another trooper at the scene, Trooper Lockney, who stored it within the safe within his police unit. *Id*. at 48. The following day, Trooper Lockney provided the evidence to a DEA agent. *Id*. at 48-49. The DEA agent testified, in part, regarding chain of custody, noting that the evidence was secured at a DEA evidence vault and later sent to a DEA lab in Dallas. *Id*. at 159-60. The agent affirmed that the evidence was in a sealed envelope when it was sent to the lab, and that it was in the same envelope when it was returned from the lab prior to the trial. *Id*. at 160. In addition, a forensic chemist with the DEA provided the following testimony regarding the evidence:

Q: Can you just tell me what Government's Exhibit Number 18 is and if you recognize that?

A: Yes, I do recognize this. It [bears] my signatures and initials.

Q: Let's have you lean into the microphone, Ms. Chu.

A: Okay, sorry. I do recognize this exhibit. It bears my initials and my signature.

Q: And what is contained inside of that exhibit bag?

A: A crystalline material.

Q: All right. Can you tell me when you received that exhibit, what condition was it in as opposed to the way you see it today?

A: So whenever I received it, it was -- the packaging was sealed and intact and it was a more -- it was bigger crystalline shards that were in there before I performed my analysis.

Q: You said that there were bigger shards in there before you performed your analysis?

A: Correct.

Q: When you performed your analysis did you do anything to those large shards?

A: Yes. So I -- per policy, we grind them up in a mortar and pestle to insure that the sample that we take for analysis is homogeneous.

[CR Doc. 99 at 83]. The DEA chemist further testified that, once the sample had been ground to a finer, dust-like substance, she conducted a series of four analyses on the sample. *Id*. at 83-85. The forensic testing revealed the crystalline shards recovered as evidence from Defendant's vehicle were methamphetamine. *Id*. at 87.

Defendant's claim that the evidence was altered in a material aspect is unsubstantiated. "Absent some showing by the defendant that the evidence has been tampered with, it will not be presumed that the investigators who had custody of it would do so." *United States v. Cardenas*, 864 F.2d 1528, 1532–33 (10th Cir. 1989) (quotation marks and brackets omitted)). Mr. Medlock cannot be deemed ineffective for failing to argue that the methamphetamine had been tampered with.

7

The court has also reviewed Defendant's catchall claims within Grounds Seven and Eight. Defendant's ineffective assistance allegations are conclusory. The court is "not required to fashion Defendant's arguments for him where his allegations are merely conclusory in nature and without supporting factual averments." *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994).

Defendant's allegations are also contradicted by the record. Defendant claims in Ground Seven that Mr. Medlock was ineffective for failing to raise the issues presented in Grounds One through Six. The Government reminds the court that Grounds One through Six "deal specifically with the matters raised in the Motion to Suppress filed by Mr. Medlock." [CR Doc. 113 at 20]. The court is also mindful that, prior to sentencing, Mr. Medlock objected to numerous paragraphs within the PSR, and he filed a motion for downward departure and/or request for variance below sentencing guidelines. As noted above, the court sustained the fourth objection, and the two-level enhancement for reckless endangerment during flight pursuant to U.S.S.G. § 3C1.2 was removed, resulting in a total offense level of 32, and corresponding sentencing range of 168 to 210 months. [CR Doc. 97 at 12]. Defendant has not shown that Mr. Medlock's performance fell below an objective standard of reasonableness.

Defendant was also well represented by appellate counsel, Mr. Sanderford. In Ground Eight, Defendant claims the issues presented in Grounds One through Six should have been raised on appeal, but he has failed to show those issues have merit. "When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on direct appeal, we first examine the merits of the omitted issue. If the omitted issue is meritless, then counsel's failure to raise it does not amount to constitutionally ineffective assistance." *Hawkins v. Hannigan*, 185 F.3d 1146, 1152 (10th Cir. 1999). Moreover, "the Sixth Amendment does not require an attorney to raise every nonfrivolous issue on appeal." *Davis v. Sharp*, 943 F.3d 1290, 1299 (10th Cir. 2019) (quoting *Banks v. Reynolds*, 54 F.3d 1508, 1515 (10th Cir. 1995)). "[The] process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)).

Lastly, Defendant fails to show that he was prejudiced by any deficient performance of Mr. Medlock or Mr. Sanderford. Defendant's claims of ineffective assistance of counsel fail both prongs of the *Strickland* standard and must be denied.

A certificate of appealability may issue only if Defendant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). When a district court denies a § 2255 motion on procedural grounds without reaching the merits of a defendant's claims, a certificate of appealability should issue when a defendant "shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court denies a § 2255 motion on the merits, a defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* Upon consideration, this court finds that the standard has not been satisfied. This court hereby declines to issue a certificate of appealability.

Defendant's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence [CR Doc. 109; CV Doc. 1] is hereby DENIED.[2] Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, this court hereby declines to issue a certificate of appealability.

It is so ordered this 22nd day of March, 2024.

_____
THE HONORABLE RONALD A. WHITE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF OKLAHOMA

---

[2]     The motion, files and records of this case conclusively show that Defendant is entitled to no relief. Thus, no evidentiary hearing was held.